My name is Amy Alpern. I represent Typhoon, Mr. Steve Klein, and Ms. Bo Klein, the appellants in this action. I'd like to reserve two minutes for rebuttal, if I may. The district court decision below should be reversed for two reasons, either of which, standing alone, warrant dismissal. The court below erred when it assumed that the language in Typhoon's arbitration agreement, which states only that the arbitrator is to be selected from a U.S. A&M list, also means that U.S. A&M would administer the arbitration and that its fee structure would be utilized. Under Oregon law, that decision was improper and should be reversed. And the agreement itself, of course, does not say that U.S. A&M fee structure should be used. But wasn't the plaintiff, doesn't the plaintiff acquit himself of his burden of presentation of evidence by saying, here's the fee schedule? Doesn't that create a presumption that if you're going to use the United States arbitration mediation, you're going to pay their regular fee schedule and shift the burden of proof to the defendant and say, no, that's not at all right, that you can negotiate, there are other circumstances. But doesn't that acquit the plaintiff of burden of proof? Not in Oregon. In Oregon. Is there a case that we've missed that says that? Yes. The case is, and there are actually three cases, Livingston v. Metro Pediatrics is the most recent case. It was decided in March 2010. And in that case, the language in the arbitration agreement was really quite similar to the language here. What the arbitration agreement said in Livingston, what the arbitration agreement said specifically on this issue, is that the arbitration shall be conducted in Multnomah County, Oregon in accordance with the rules of the American Arbitration Association. Now, you would think that an arbitration agreement that says that you would follow the AAA rules, in fact, implies that that fee structure would also apply to the case. The Court in Livingston said no. Use of language that simply says use of AAA rules does not mean that their cost structure automatically applies. And if you think about it, there are a lot of reasons why parties to an arbitration agreement may say, well, we want to use AAA rules. That way, it gives the parties a framework for conducting the arbitration. But do you want to ask a question or should I finish? When I look at the rules that were in the excerpt of records for the, I guess, in the supplemental excerpt of records for the USAM, they say that arbitrators are independent contractors and not agents or employees of USA and AM. Now, opposing counsel makes the argument that if you get an arbitrator, of course, they're going to, from USA and AM, of course, they're going to use that fee structure. But how do I understand this language that they're independent contractors in that light? Is it a necessary requirement? I don't think it is a necessary requirement in Oregon, but I do think that it's an indication that, of course, they can use whatever fee structure and rules they want. I really think that we're not even to the point in this case, though, of looking at USA and AM rules. We simply have an agreement that says an arbitrator selected from a list of USA and AM arbitrators. And just as parties may say I didn't quite say that. It's about a mutually selected neutral arbitrator from the United States arbitration and mediation. Isn't that right? It doesn't say anything about a list of persons. The language itself I mean, the United States arbitration mediation may pick up the phone when they get a call and say we're referring this to AAA. Excuse me? Couldn't USA and AM refer the matter to AAA under this rule? Under which rule? I'm sorry. But I just quoted neutral arbitrator from United States arbitration and mediation. That doesn't mean that he is on a list. It doesn't mean he's a member. It means simply that United States arbitration and mediation provides the arbitrator. I'm not sure that that is what it means. I think that this case, if you look at the other cases in Oregon, and it's not just Livingston case. It's also cases like Motzinger that says when you have an arbitration agreement that says we're going to follow FAA arbitration and Oregon revised statutes. Oregon also has arbitration statutes. And the Oregon arbitration statutes say, you know, they have fee-splitting provisions. The courts say simply referencing a statute that itself has a fee structure doesn't necessarily mean that that fee structure will apply to this case. I think what the Oregon courts are really saying is that it has to be very clear in the agreement that the fee structure applies to this plaintiff. And in this case, on this language, in this agreement, it is not clear. What is clear in this case — Excuse me. Because time is short. We have a little bit more on the record, and I just wanted to see if I could get you to talk about that. As I understand, your client made a representation that it would pick up the initial fees, and I'm characterizing here what was said. Right. And I was wondering if you could tell me exactly the scope of that representation and how it plays into the decision that we need to make here. What Typhoon has agreed to do is to pay the cost of the arbitration, including the cost of the arbitrator. This was done in connection with — Pay up front or pay forever? Well, it depends on what cost structure applies to it. No, no. I'm asking you what to this your client's representative would do. Well, they — It was a little weasley, I thought. Oh, that was not the intent. That's not a turmoil. I thought it said, well, we'll pay it subject to whatever the arbitrator — it was a little escape clause at the end, and I wasn't quite sure — That was not the intent. The intent was — I don't really care about intent. I really care about what it means. Or what are you representing to us that your client has bound itself to do? To pay whatever costs of the arbitration that either party is — And so just let me explore that. So if it turns out you go to arbitration, the bill is — $10,000. Let's just say $10,000. And the arbitrator finds on every point in favor of your client. The employee loses on every point. Right. Just posit that situation, which is the worst possible scenario for the employee. Your client has undertaken to pay the $10,000. Yes. And not seek recovery from the employee. That's correct. Okay. How about the attorney's fees for — No. They have to pay their own attorney's fees. Win, lose, or draw. Attorney's fees are not addressed — Yes or no? No. The statutes, it depends on what — Now, what's your representation? Would you pay the plaintiff's attorney's fees, win, lose, or draw on the arbitration? Only — no, I will not. No. Okay. Thank you. You've got a minute and a half left. Let me talk a little bit about Typhoon because I think this is important. I want to talk about how Thai nationals become lawfully employed to work in the U.S. What Typhoon does is they advertise in Thailand for jobs in the U.S. at Typhoon. The chefs in Thailand who are interested in coming to the U.S. and working here lawfully are given an employment application to review in Thailand. That employment agreement and application that they review tells them when they're still in Thailand that you can only work for Typhoon when you're in the U.S. And it covers a two-year period. And then at the end of the two years, the employee returns to Thailand on a ticket paid for by Typhoon. Now, if the employee decides after six months that he or she is unhappy with the arrangement, Typhoon will pay for them to fly back to Thailand. So what it does is it creates an opportunity for chefs in Thailand to come to the United States to experience this country for a two-year period and perhaps renew the agreement on a ticket paid for by Typhoon. The requirement, by the way, that the employee has to leave the country if they're no longer employed at Typhoon is a U.S. immigration rule, not a Typhoon-imposed rule. So the nature of an E-2 visa is such that... Well, I take it that if the employee marries a U.S. citizen or... Sure. ...finds or enrolls in a U.S. university, well, you don't know, you're not expected to be... But assuming they find some other basis for staying in the country that they can square with the... What's it called? Immigration. Absolutely. Yes. It used to be called INS. Right. I keep calling it... You're correct. Typhoon wouldn't stay in the way, right? No, no. Okay. Anyway, you're in negative numbers now. Excuse me? You're in negative minutes. Are there any more questions? Okay, we'll give you a minute or two for rebuttal. Thank you. Okay, thank you. We'll hear from the other side. Good morning. Zan Tewksbury for the plaintiff appellee, Serena Raybroy. Do you have any questions of me before I... In light of Typhoon's representation that it would pick up the entire cost of the arbitration, why doesn't that undermine the district court's finding of substantive accountability? Well, before... Aside from whether it was before or not, otherwise, but given that representation. Well, this is the first time we've heard that. It's in the briefs very clearly spelled out that they would advance costs, which I think on its face implies that they are trying to impose a loser-pays arrangement on Ms. Raybroy, should she not prevail at arbitration, which arrangement has been soundly rejected by the courts of the circuit. But even then, the district court did not take that into account. What the district court seemed to be holding, and it was not entirely clear, but what I thought the district court held is that an arrangement that requires the employee to pay the fees up front, as the fee schedule of the association seems to suggest, that whoever brings a suit has to pay the full fees up front, that that was unconscionable and certainly may well be, but an arrangement where the employer pays up front and then even allowing for this ambiguity that at the end it would be up to the arbitrator, that's a different arrangement than one where the employee can't even get out of the starting gate  the absence of any mention in the arbitration provision, other than it requires the parties to use a U.S. A&M arbitrator. The fees that those arbitrators charge are spelled out in the rules. There is no way for someone to know who pays, what's going to be the arrangement. This is totally shooting in the dark for someone in Ms. Raybroy's position. She's already coming into this situation in vastly, vast disparity of bargaining power. It's not so dark anymore once the employer says they'll pick up the fees. I mean, it seems to me you don't have an arbitration agreement that says, by its terms, whoever brings a suit will pay the fees up front. That's something you have to go outside the arbitration agreement, you have to present evidence on, and the evidence is sort of weak because, as we've discussed here, it's not entirely clear that if you get an arbitrator from this particular association that they necessarily have to use a fee structure or the rules of the association. Maybe it's a fair inference or not, but at least you're going outside the record in your I'm sorry, you're going outside the arbitration agreement and looking at additional evidence. Well, why doesn't this Court also have to consider, if it is going outside arbitration agreement, the fact that the employer has said, well, whatever the, you know, whatever the association's fee arrangements are, we'll pick up the tab? Well, they didn't say that. It took us to stand before this panel bearing down on Typhoon for them to say that. Why don't you declare victory and say you accept the concession and you move Well, this is precisely the reason why Congress says before it the Arbitration Fairness Act of 2009, this kind of oppressive action by Typhoon is just, it's just totally, it's unconscionable. It's substantively unconscionable. But you've gotten everything you claim for your client. They have now conceded, if not earlier, and I, as I said to opposing counsel, I thought that what they said in the court was, what did I say? Ambiguous, I think is what I used, or some variant of that. But now they've been very clear about it. And so you, it seems to me, you've won a victory, you know, without having to stand up. You've conquered. Oregon courts and the Livingston Is there any reason why this case shouldn't be remanded for arbitration on the terms as conceded by Typhoon? There is a reason why the courts consider the arbitration provisions as written. This is what they tried to enforce upon her. And it wasn't until she challenged it, and there are many arbitration services out there. AAA, for example, we know, has a very favorable-to-employee structure where they pay nothing over what they would pay in court, maybe even less. Why the court should not take lightly the mention of USA&M, which goes way beyond the cost-splitting arrangements of most arbitration services and actually imposes the full cost upon the person initiating arbitration. I understand your concern, and you're representing your client. You've done a great job. I mean, I'm not, I'm being entirely serious. You saw this issue with the payment of the fees, and you have wrestled your opponent to the ground where they've now said, we'll pay everything up front. And I'm just Well, they pay for the cost of this appeal as well, I wonder. I mean, it's taken us to stand before the Ninth Circuit Court of Appeals for them to now say, we will pay for everything. Before, in writing to this court and to the district court below, they offered merely to advance the cost, reserving their rights, to go after Ms. Rehboy should she not prevail in arbitration. And the courts have said this loser-pays arrangement is unconscionable. It's not, it's not something that we can countenance, because you don't pay the court back if you lose your case. Well, when I look at this arbitration provision that says, mutually selected neutral arbitrator from the United States arbitration mediation, at a minimum, it seems to me ambiguous as to who would bear the cost, given that the rules indicate that the U.S. A&M arbitrators are independent contractors. Given that, who has the burden of proof? Now, I know Green Tree says that the party claiming unenforceability has the burden of showing the likelihood of incurring those costs. So I'm not sure why just showing that U.S. A&M has a cost structure isn't enough. Livingston seems to indicate that's not enough. You have to show that the fees are actually imposed, or that there's a likelihood that the petitioner would bear those fees. Well, I think that Livingston is distinguishable, because that merely makes reference to AAA rules. Right, but look at Green Tree, which says, who bears the burden of proof? Which are favorable to employees. Who bears the burden of proof? Well, I think, I think correctly that the person objecting to the arbitration provision bears the burden under Green Tree. And as interpreted by the Court of Appeals in Oregon, in Vasquez-Lopez, and also in Livingston, they address this issue. And they distinguish the Livingston fact pattern from that in Vasquez-Lopez and the Torrance case out of Oregon District Court that plaintiff aptly relied upon, where it appears that costs, I mean, if you use a U.S. A&M arbitrator, why would an arbitrator belong to U.S. A&M unless their fees? And we weren't talking about arbitration costs. That's another issue altogether. We're merely talking about the evidence we put on was that the arbitrator fees are $180 per hour to $3,800 a day. And there's no reason to think that they wouldn't charge their U.S. A&M fees. That's the fees they charge as independent contractors or as employees of U.S. A&M. It's written right there what they charge, what each of them charges. It's a different fee, as we showed, per arbitrator. My impression is that you're lucky not to be in California. Those fees would be considered a bargain. Oh, okay. I was going to say, wait, the law might be more favorable to us. I just meant in terms of the fees, right? When you talk about fees, your costs are not paid? You're talking about your attorney's fees are not paid? No, we're just talking about the fees, the arbitrator fees. That was the evidence we put on. I'm just trying to ask, what would it make to make this appeal go away, as far as you're concerned? The appeal go away is if the court upholds the district court's decision and allows Ms. Rehobroy to pursue her claims in court. You want to go to court. Yes. You don't want arbitration, even with them paying the fees. No. Okay. Thank you. Thank you. Let's get straight what you are offering to pay. And that's exactly what I wanted to say. And I wanted to tell you that in the excerpt of the record at page 10, not today, but at the district court level, what the court found is as follows, quote, Defendants stipulate that if the court upholds the arbitration clause, they will not require plaintiff to be represented by counsel during arbitration, and they will pay all arbitration costs. That's at page 10 of the excerpt of record. And as has been established, the party challenging arbitration has the burden of proof not only to establish what the costs or cost structure apply, but that the cost structure will hinder or unreasonably interfere with this plaintiff's ability to pursue arbitration. And that's, again, where the Livingston case comes into play. That case is very interesting. There was an attorney affidavit that said, I have never had a client in all of my years as being a lawyer willing to file a claim if there was a prevailing party attorney fee provision. The court said, not good enough. You did not tell us what impact the arbitration provision would have on your client. In this case, there's no evidence as to what the cost provision is, regardless of what that may be, what impact that will have on this plaintiff and whether it will affect her ability to go forward with arbitration. And finally, I think it's been made clear today, we want arbitration. Plaintiffs want to trial. I think that's at the heart of the issue. Thank you. Roberts.
judges: Kozinski, Bea, Ikuta